IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re MAUI INDUSTRIAL LOAN & FINANCE CO., INC., | CIV. NO. 14-00457 JMS-KSC |
| Debtor. | ORDER (1) RULING ON QUESTION OF LAW REGARDING THE "FRAUD ON THE PARTNERSHIP" EXCEPTION, AND (2) REQUESTING COMMENT ON FORM OF QUESTION TO BE CERTIFIED TO THE HAWAII SUPREME COURT |
| DANE S. FIELD, | |
| Plaintiff, | |
| vs. | |
| DENNIS I. HINAHARA; MYRA S. HINAHARA, | |
| Defendants. | |

## ORDER (1) RULING ON QUESTION OF LAW REGARDING THE "FRAUD ON THE PARTNERSHIP" EXCEPTION, AND (2) REQUESTING COMMENT ON FORM OF QUESTION TO BE CERTIFIED TO THE HAWAII SUPREME COURT

## I. INTRODUCTION

This Order rules on a threshold issue of law in this adversary

bankruptcy proceeding arising out of a Ponzi scheme perpetrated by Lloyd Kimura

("Kimura").[1]  Plaintiff bankruptcy trustee Dane S. Field ("Trustee"), seeks to avoid

---

[1] *Donell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2007), explains that:

A Ponzi scheme is a financial fraud that induces investment by
promising extremely high, risk-free returns, usually in a short time

(continued...)

nearly a million dollars of fraudulent transfers made to Defendants Dennis and

Myra Hinahara (the "Hinaharas") by Debtor Maui Industrial Loan and Finance

Company, Inc., which sometimes did business as Maui Finance Company

("MFC") in connection with Kimura's Ponzi scheme. Currently before the court

are Objections under 28 U.S.C. § 157(c)(1) to a July 11, 2014 Proposed Findings

of Fact and Conclusions of Law ("PFOF/PCOL") of the United States Bankruptcy

Court for the District of Hawaii that, among other matters, found that the

Hinaharas took most of the transfers in good faith.[2]

      At issue in this Order is specific language -- emphasized below -- in

the Uniform Partnership Act ("UPA") § 12 (previously adopted in Hawaii Revised

Statutes ("HRS") § 425-112 (1972)), and the Revised Uniform Partnership Act

---

[1](...continued)
        period, from an allegedly legitimate business venture. "The fraud
        consists of funnelling proceeds received from new investors to
        previous investors in the guise of profits from the alleged business
        venture, thereby cultivating an illusion that a legitimate
        profit-making business opportunity exists and inducing further
        investment." *In re United Energy Corp.*, 944 F.2d 589, 590 n.1
        (9th Cir. 1991). *See generally Cunningham v. Brown*, 265 U.S. 1,
        7-9 (1924) (detailing the remarkable criminal financial career of
        Charles Ponzi).

  [2] To be clear, this Order rules only on the threshold question of law. Although this Order
recites certain undisputed facts and sets forth certain legal principles, the Objections to the
PFOF/PCOL remain pending -- the parties should not construe statements in this Order as
definitively adopting (or rejecting) any of the specific findings or conclusions in the
PFOF/PCOL.

("RUPA") § 102(f) (adopted in HRS § 425-102(f) (2000)).  Specifically, UPA

§ 12 provides:

> Notice to any partner of any matter relating to
> partnership affairs, and the knowledge of the partner
> acting in the particular matter, acquired while a partner
> or then present to his mind, and the knowledge of any
> other partner who reasonably could and should have
> communicated it to the acting partner, operate as notice
> to or knowledge of the partnership, *except in the case of
> a fraud on the partnership* committed by or with the
> consent of that partner.

(Emphasis added.)  Likewise, RUPA § 102(f) provides:

> A partner's knowledge, notice, or receipt of a
> notification of a fact relating to the partnership is
> effective immediately as knowledge by, notice to, or
> receipt of a notification by the partnership, *except in the
> case of a fraud on the partnership* committed by or with
> the consent of that partner.

(Emphasis added.)  The court received supplemental briefing from the parties on

the meaning and potential applicability of the emphasized "fraud on the

partnership" exception to imputation of a partner's knowledge in both UPA § 12

and RUPA § 102(f).[3]  *See* Doc. Nos. 13, 16 & 17.  Based on the following, the

court concludes that the "fraud on the partnership" exception does *not* apply.

---

[3] Because Kimura's Ponzi scheme ran from the late 1980's, both UPA § 12 and RUPA § 102(f) are potentially at issue.  The "fraud on the partnership" exception, however, is identical under either model Act.

3

Given that conclusion, the court squarely faces the question whether Kimura's knowledge of his Ponzi scheme is imputed by law to the Hinaharas, who were partners with Kimura in certain real estate transactions. The answer turns on a question of Hawaii law which the court intends to certify to the Hawaii Supreme Court under Hawaii Rule of Appellate Procedure ("HRAP") 13(a). Accordingly, the court requests comment from both parties as to the form of the question, as explained to follow.

## II. BACKGROUND

### A. Kimura's Ponzi Scheme[4]

Kimura was a certified public accountant on Maui who, beginning in 1985, was the principal owner and the person in control of MFC. PFOF/PCOL at 3, ¶ 3. MFC was licensed under Hawaii law as a "nondepository financial services loan company," engaged in the business of making loans. *Id.* ¶ 2. Although Hawaii law forbids nondepository financial services loan companies from accepting deposits from the public, MFC ignored this prohibition and accepted millions of dollars of deposits from dozens of depositors. *Id.*

---

[4] The court describes the background of Kimura's Ponzi scheme only as necessary to explain the context for this ruling. Many more details are set forth in the PFOF/PCOL. Doc. No. 1-2. *See also generally Field v. DeCoite (In re Maui Indus. Loan & Fin. Co.)*, 2013 WL 2897792 (D. Haw. June 12, 2013) (describing the scheme in a related adversary action). Likewise, this Order focuses on only one of several issues raised in the Objections to the PFOF/PCOL.

Beginning in the late 1980s, Kimura began to operate a Ponzi scheme. *Id.* ¶ 7. He induced individuals (many of them his accounting clients) to invest money with him or MFC, often representing that MFC was a bank or savings and loan business that made loans at high interest rates secured by collateral and that investors would receive interest at rates usually ranging from eight to twelve percent. *Id.* Contrary to his promises, he usually did not use the investors' funds to make loans, but instead used them to finance his personal businesses and investments, to maintain his personal lifestyle, and (in order to maintain the perceived legitimacy of his business) to pay earlier investors their promised principal and interest. *Id.* He also generated false monthly statements and tax returns to convince investors that he was using their funds as promised. *Id.* In order to generate some of the cash needed to keep the Ponzi scheme afloat, he fraudulently obtained bank loans and looted his accounting firm's retirement plan accounts. *Id.*

The Hinaharas are husband and wife and residents of Maui. *Id.* ¶ 4. They met Kimura in the early 1980s. *Id.* ¶ 5. Over the course of their relationship, the Hinaharas engaged in a number of business ventures with Kimura. For example, the Hinaharas made a number of monetary transfers to MFC from 1990 through June 2007, which Mr. Hinahara thought of as "deposits" in a savings

account, and on which MFC regularly paid the interest due (although on some occasions the payments were a few days late). *Id.* ¶¶ 9, 12.

Beginning in 1988, Kimura and his wife and the Hinaharas also jointly purchased interests in numerous parcels of real estate. *Id.* ¶ 14. Some of the properties were acquired by Kimura and Mr. Hinahara; some investments included one or both of their wives; and some included other unrelated people. *Id.* Each of these joint investments in real estate was a partnership, an association of two or more persons to carry on as co-owners a business for profit. *Id.* ¶ 15.[5]

Most of the joint investments and companies created by the Hinaharas and the Kimuras were successful and profitable. *Id.* ¶ 17. With the agreement of the other investors and/or partners, Kimura managed the day-to-day affairs of these ventures and companies, which included keeping the books, collecting rents and other income, paying expenses, and arranging for routine upkeep of the properties. Kimura also deposited income from these ventures directly into the Hinaharas' accounts. Bankr. Dkt. 147 at 45, 49; *id.*, Bankr. Dkt. 148 at 84.

On October 19, 2009, the Hawaii Commissioner of Financial Institutions made a preliminary finding that MFC was unlawfully soliciting,

---

[5] The Hinaharas and the Kimuras also formed, owned, and served as the officers, directors, or managers of several corporations and limited liability companies. PFOF/PCOL at 8, ¶ 16. This Order, however, concerns only the Kimura/Hinahara partnerships.

accepting, or holding deposit accounts, and issued a temporary cease and desist

order. *Id.* ¶ 25. MFC failed to respond to the temporary order, and the

Commissioner made it permanent on November 3, 2009. *Id.* On January 28,

2010, MFC filed a chapter 7 bankruptcy petition.

Kimura was charged in federal court with mail fraud, bank fraud,

theft from an employee benefit plan, and other crimes arising out of MFC. He was

convicted after entering into a January 5, 2011 plea agreement in which he

admitted to operating a Ponzi scheme. *Id.* ¶ 27. In the plea agreement, Kimura

admitted among other facts that:

> Once individual investors provided funds to [Kimura]
> the funds were usually not loaned to individual
> borrowers or businesses as represented, but were instead
> deposited into [MFC's] bank account . . . . The funds
> were then expended on [Kimura's] personal and business
> endeavors to include the purchase of land and buildings
> as well as other business ventures of [Kimura].
> . . . .
> Instead of using investor funds for the purposes
> represented . . . [Kimura] used investor funds to maintain
> the liquidity of his businesses [and] to purchase real
> estate[.]

Doc. No. 89-1 at 198-99, Pl.'s Ex. 20 at 5, 6 ¶¶ 8e & 8h. Likewise, in a related

case, the Bankruptcy Court explained that

> [t]he plea agreement establishes that Mr. Kimura's Ponzi
> structure was not isolated to one specific entity, but

> rather encompassed a web of transactions all
> orchestrated by Mr. Kimura himself. . . .  The plea
> agreement, therefore, establishes Mr. Kimura's and
> MFC's fraudulent intent as to all of the transactions
> conducted during the Ponzi scheme.

*Field v. Marumoto (In re Maui Indus. Loan & Fin. Co.)*, 2013 WL 1909536, at *1

(Bankr. D. Haw. May 8, 2013).

## B.     The Adversary Complaint and the PFOF/PCOL

As part of MFC's bankruptcy proceeding, Trustee filed an adversary

complaint against the Hinaharas seeking to avoid nearly a million dollars of

fraudulent transfers made to the Hinaharas by MFC in connection with Kimura's

Ponzi scheme.  The Hinaharas asserted an affirmative good faith defense under

HRS § 651C-8(a).  Trustee did not dispute that the Hinaharas had no actual

knowledge that Kimura and/or MFC was insolvent, operating a Ponzi scheme, or

making transfers with the intent to hinder, delay, or defraud creditors until

sometime after MFC filed its bankruptcy petition in 2010.  PFOF/PCOL at 26,

¶ 12.  Rather, Trustee argued that the Hinaharas did not take any transfers in good

faith because the Hinaharas had inquiry notice of the fraud, and/or because

knowledge of Kimura's fraud is imputed to the Hinaharas as a matter of law given

the partnerships they formed with Kimura.

The Bankruptcy Court issued its PFOF/PCOL after a seven-day trial

which was limited to the Hinaharas' good faith defense (the Bankruptcy Court had previously determined as a matter of law at the summary judgment stage that the transfers at issue were "fraudulent" as having been made "with actual intent to hinder, delay, or defraud" creditors under HRS § 651C-4(a)(1)).[6] It determined that the Hinaharas took the transfers in good faith such that Trustee could recover only the difference between MFC's transfers to the Hinaharas and the Hinaharas' deposits to MFC -- $52,729.75 -- plus pre-judgment interest. This amount is substantially less than the $988,879.75 originally sought by Trustee. Trustee objects under 11 U.S.C. § 157(c)(1).[7]

## C.    The Threshold Legal Issue

Because Kimura and the Hinaharas were partners or joint venturers in certain real estate transactions related to Kimura's Ponzi scheme, Trustee seeks to impute Kimura's knowledge of the Ponzi scheme to the Hinaharas. And, of course, imputing such knowledge would negate the Hinaharas' defense of good faith. Trustee seeks to apply general principles of partnership law from UPA § 12 and RUPA § 102(f) -- now codified in HRS § 425-102(f) -- that knowledge of a

---

[6] It also granted partial summary judgment in favor of the Hinaharas, ruling under 11 U.S.C. § 548 that Trustee may not recover transfers made more than two years before the bankruptcy filing. PFOF/PCOL at 1-2.

[7] The Hinaharas also filed a limited Objection, which is not pertinent to this Order.

partner relating to partnership affairs is imputed to the partnership. Trustee

contends that knowledge imputed to the partnership is also then necessarily

imputed to the individual partners -- imputation to all partners follows from the

nature and definition of a partnership, which HRS § 425-101 defines as "an

association of two or more persons to carry on as co-owners a business from

profit."

The Bankruptcy Court disagreed, concluding that the plain language

of § 425-102(f) (and its predecessor, HRS § 425-112 (1972))[8] only imputes

knowledge of a partner *to the partnership*, and not to other partners. This

conclusion was based in part on the theory that modern partnership law considers

a partnership to be a distinct entity (in contrast to a perhaps outdated concept that

a partnership is no more than an association of persons). *See* HRS § 425-108(a)

("A partnership is an entity distinct from its partners."). The Bankruptcy Court

reasoned that "[t]he concept of imputation of notice among partners is an

anachronism," PFOF/PCOL at 30, ¶ 19a, concluding that "[i]n short, the doctrine

that notice to one partner is imputed to all other partners was correct at common

_____

[8] Hawaii enacted HRS § 425-102(f) as part of its adoption of RUPA as a whole, effective in 2000. *See* Act 284, 1999 Haw. Sess. L. 886. Prior to that, Hawaii followed UPA § 12 as codified in 1972 in the prior HRS § 425-112 (1972). *See* Act 17, 1972 Haw. Sess. L. 174 (adopting the UPA).

10

law, but is no longer correct under UPA and RUPA." *Id.* at 31, ¶ 19d.

Among other grounds, Trustee objects to the Bankruptcy Court's reading of Hawaii partnership law, arguing that the "anachronism" of imputation of notice among partners is nevertheless valid and is embedded in caselaw. *See, e.g.*, *Friend v. H.A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir. 1969) ("Well established concepts of partnership doctrine impute the knowledge and actions of one partner to all others.") (citations omitted); *BMS P'ship v. Winter Park Devil's Thumb Inv. Co.*, 910 P.2d 61, 63 (Colo. App. 1995) ("Under the law of general partnerships, notice to and knowledge of the general partner of the enterprise operates as notice and knowledge to the partnership. Likewise, in a general partnership, notice to the general partner also operates as notice to each partner.") (citations omitted); *Affiliated FM Ins. Co. v. Kushner Cos.*, 627 A.2d 710, 716 (N.J. Super. 1993) ("Knowledge by one partner with respect to any matter relating to a transaction within the ordinary scope of the partnership business is knowledge to all partners. Knowledge with respect to partnership property is imputable to the remaining partners regardless of the nature of the partnership.") (citations omitted).

Hawaii courts have not specifically addressed, after adoption of the UPA and RUPA, whether a partner's knowledge is necessarily imputed to other

individual partners (as opposed to imputed to the partnership). The Bankruptcy Court recognized that the question is not answered by general statements of Hawaii partnership law indicating that an "innocent" partner remains liable for actions of other partners committed within the scope of the partnership's business. *See* PFOF/PCOL at 32-33, ¶¶ 20b & 20c (distinguishing *Fujimoto v. Au*, 95 Haw. 116, 160, 19 P.3d 699, 743 (2001) ("[L]ack of actual knowledge of wrongdoing and innocence of fraud, in themselves, do not absolve one joint venturer of liability for the fraud of another joint venturer acting within the scope and authority of the joint venture.") (citing *E. Iron & Metal Co. v. Patterson*, 39 Haw. 346, 356-58 (1952)). "In the absence of Hawaii case law directly on point . . . [the Bankruptcy Court] predict[ed] that Hawaii's state courts would follow the plain language of RUPA and UPA and hold that notice to a partner is imputed to the partnership but not to the other partners." PFOF/PCOL at 29, ¶ 18.

And so, the legal question raised by Trustee is whether, under Hawaii law, a partner's knowledge of a fact relating to the partnership is imputed to other partners or only to the partnership itself. As discussed at the January 23, 2015 hearing, the court will certify this important question of Hawaii law to the Hawaii Supreme Court if the requirements under HRAP 13(a) are met. Rule 13(a) provides that a federal district court may certify a question to the Hawaii Supreme

Court when the question (1) concerns Hawaii law; (2) is "determinative of the cause;" and (3) there is no clear controlling precedent in Hawaii judicial decisions.

And this leads to the threshold issue -- if the "fraud on the partnership" exception to imputation of a partner's knowledge in § 425-102(f) applies, then the primary legal question is moot. That is, even if knowledge of a partner is generally imputed to other partners, it would not matter here if the "fraud on the partnership" exception applies -- Kimura's knowledge of his Ponzi scheme would not otherwise be imputed to the partnerships (nor, in turn, to the Hinaharas). The legal question as to imputation of knowledge among partners would not be "determinative of the cause" under HRAP 13(a), and certification would be improper. Accordingly, before certifying the question to the Hawaii Supreme Court, the court must first determine whether the "fraud on the partnership" exception applies to the facts of this case.

## IV. DISCUSSION

### A. The Issue Is Properly Before the Court

Trustee contends that this court lacks jurisdiction under 11 U.S.C. § 157(c)(1) to consider whether the "fraud on the partnership" exception applies, arguing that the Hinaharas failed to "timely and specifically object" to the Bankruptcy Court's determination that they "offered no evidence that Kimura

13

perpetrated or consented to a fraud on any of their partnerships." PFOF/PCOL at

28 n.83.[9] The court disagrees.

Initially, it is unclear whether § 157(c)(1)'s requirement for a "timely

and specific" objection is jurisdictional, or whether it is merely a requirement

triggering de novo review (with findings otherwise being subject to review for

clear error). *See, e.g.*, *In re Preston*, 516 B.R. 606, 609 (C.D. Cal. 2014)

(concluding that parties waived their right to de novo review of proposed findings

and conclusions by failing to timely object under § 157(c) and Federal Rule of

Bankruptcy Procedure 9033, and thus the district court reviewed the bankruptcy

court's factual findings for clear error). The court, however, need not resolve this

question because the issue is otherwise properly before the court.

Although the Hinaharas did not *initially* raise the "fraud on the

partnership" exception, the Hinaharas discussed the issue (at least tangentially) in

---

[9] Section 157(c)(1) provides

> A bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title 11. In
> such proceeding, the bankruptcy judge shall submit proposed
> findings of fact and conclusions of law to the district court, and any
> final order or judgment shall be entered by the district judge after
> considering the bankruptcy judge's proposed findings and
> conclusions *and after reviewing de novo those matters to which
> any party has timely and specifically objected*.

(Emphasis added.)

their Response to Trustee's Objections.  *See* Doc. No. 5-1, Defs.' Response at 14-15 n.10.[10]  The court considers that reference sufficient to preserve the threshold issue, especially where the Hinaharas *prevailed* before the Bankruptcy Court on the legal issue -- the Bankruptcy Court concluded that Kimura's knowledge is not imputed to the Hinaharas under its interpretation of Hawaii law.  Logically, the Hinaharas would not be expected to object to that conclusion, and would not need to raise any exception to imputation in the first instance.  And, in any event, the meaning and applicability of § 425-102(f) is squarely before the court based, at minimum, on the Trustee's Objection arguing that the Bankruptcy Court erred as a matter of law in not imputing Kimura's knowledge to the Hinaharas.  The court thus proceeds to examine the threshold issue.

## B.    The "Fraud on the Partnership" Exception Does Not Apply

In addressing this issue, it is important to understand exactly what knowledge Trustee seeks to impute.  Trustee argues that "Kimura's knowledge *of the Ponzi scheme* is imputed to Defendants as a matter of law."  Doc. No. 6, Pl.'s Obj. at 4 (emphasis added); *see also* PFOF/PCOL at 27, ¶ 13 ("The trustee argues

---

[10]  The Hinaharas mentioned in a footnote that "even assuming one partner's knowledge may be imputed to another partner individually, the plain language of the UPA limits imputation of knowledge to 'a fact relating to the partnership' *and provides an exception for acts of fraud on the partnership*.  HRS § 425-102(f)[.]"  Doc. No. 5-1, Defs.' Response at 14-15 n.10 (emphasis added).

that the Hinaharas and Kimura were partners in various business ventures and that

therefore Kimura's knowledge of his Ponzi scheme is imputed to the Hinaharas as

a matter of law.").[11]  In particular, Trustee points to (among other "business

endeavors") "twenty Kimura/Hinahara partnerships."  Doc. No. 12, Pl.'s Suppl.

Mem. at 1.  Among other assertions, Trustee's theory, as clarified in supplemental

briefing, is that:

- "All of the Kimura/Hinahara partnerships were part of Kimura's Ponzi scheme, beginning with the first one, formed in November 1988;"

- "Every transfer Kimura and MFC made to the Kimura/Hinahara partnerships was made with fraudulently-obtained proceeds of Kimura's Ponzi scheme and with the actual intent to defraud;" and

- "All of the transfers that the Hinaharas took from MFC were fraudulently obtained proceeds of Kimura's Ponzi scheme."

*Id.* at 1-2.

Further, Trustee bases his theory *beyond* Kimura only using *proceeds*

of his Ponzi scheme to invest in Kimura/Hinahara real estate ventures -- he also

---

[11]  Trustee separately argues that the Hinaharas were involved with partnerships with MFC itself -- a claim that the Bankruptcy Court rejected.  *See* PFOF/PCOL at 11, ¶ 23 ("These loans were not associations of two or more persons to carry on as co-owners of a business for profit.  The Hinaharas did not co-own anything with MFC."); *id*. at 27, ¶ 14 ("The coordinated loans made by the Hinaharas and MFC . . . were not partnerships.").  This Order does not address this argument -- the Order is limited to discussing whether Kimura's knowledge is imputed to the Hinaharas based on their real estate partnerships, and not on a theory that the Hinaharas themselves participated in the Ponzi scheme or were partners with MFC.

asserts that those ventures were actually "part of the Ponzi scheme." Doc. No. 14, Tr. Jan. 23, 2015 Hearing at 6-7. Not only were proceeds of the Ponzi scheme used to fund real estate partnerships, but the partnerships were used "to build up equity to further the Ponzi scheme." *Id.* at 9. Trustee argues that "proceeds from the real estate sales went into [MFC]," and "[e]verything that went into [MFC] then came out." *Id.* at 11.

Among the Kimura/Hinahara partnerships, Trustee specifically identifies (1) a June 1999 "2030 Vineyard Street" partnership where money was transferred from the partnership to MFC, Doc. No. 15, Pl.'s Suppl. Statement at 4-5; and (2) transactions involving a "14 Wailana Place" partnership, a "2022 Kahekili Highway" partnership, and a "181 Baldwin Avenue" partnership that were used by Kimura to move proceeds in and out of Kimura's accounts. *Id.* at 5-6.[12] The court thus accepts, for purposes of this Order, that at least some Kimura/Hinahara partnerships were involved in Kimura's Ponzi scheme -- both as recipients of proceeds as well as providing funds to Kimura's scheme (although, again, Trustee does not dispute that, as found by the Bankruptcy Court, the Hinaharas had no *actual* knowledge that Kimura was operating a Ponzi scheme

---

[12] The court overrules the Hinaharas' objection to the scope of Trustee's supplemental filing. *See* Doc. No. 19, Defs.' Suppl. Response at 2-3 (objecting to length and scope of Trustee's Memorandum).

until sometime after MFC filed its bankruptcy petition in 2010).

Given these facts, the "fraud on the partnership" exception does not apply. Although the court has found no published Hawaii appellate case specifically holding as such under § 425-102(f), several cases interpreting RUPA § 102(f) and UPA § 12 explain that the exception does not apply where the partnership "benefits" from the fraud.[13]

*Grassmueck v. American Shorthorn Assocation*, 365 F. Supp. 2d 1042, 1049-50 (D. Neb.), *aff'd*, 402 F.3d 833 (8th Cir. 2005), summarizes the applicable standard:

> The fraud exception described in UPA § 102(f) does not apply 1) when the fraud is committed for the benefit of the partnership, 2) with respect to the rights of third parties acting without knowledge of the fraud, or 3) when the partner perpetrating the fraud acts as the sole representative or "alter-ego" of the partnership.

*See also, e.g.*, *F.D.I.C. v. Braemoor Assocs.*, 686 F.2d 550, 556 (7th Cir. 1982) ("The exception in section 12 of the Uniform Partnership Act for frauds on the partnership is not applicable to this case, because [the partner] was committing fraud on behalf of rather than against the partnership.") (citations omitted); *cf.*

---

[13] Hawaii statutes are generally interpreted consistently with uniform laws. *See* HRS § 1-24 ("All provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws of the states and territories which enact them.")).

*F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 302 (6th Cir. 2009) (Gilman J.,

concurring) ("[T]he fraud-on-the-partnership exception does not apply . . . when

the fraud is committed for the benefit of the partnership[.]") (quoting *Grassmueck*,

365 F. Supp. 2d at 1049-50); *cf. Impulsora Del Territorio Sur, S.A. v. Cecchini

(In re Cecchini)*, 780 F.2d 1440, 1444 (9th Cir. 1986) ("It is also undisputed that

Cecchini was acting on behalf of the partnership and in the ordinary course of the

business of the partnership when he converted the funds.  Robustelli, at a

minimum, *participated in the benefits of the conversion*, as evidenced by his

entering into the stipulated judgment in favor of plaintiff.  Therefore, applying

basic partnership law, Cecchini's knowledge and intent are imputed to

Robustelli.") (emphasis added) (citations omitted).[14]

     More generally, the "fraud on the partnership" exception is simply an

application of an "adverse interest" exception in basic agency law:

> [U]nder the UPA, the normal rule imputing knowledge
> from one partner to the partnership does not apply when
> the partner in question is acting fraudulently.  This is
> known as the "adverse interest exception" to the
> imputation rules.  The refusal to impute knowledge to the
> principal of an agent who is acting adversely to the

---

[14] *Cecchini* was overruled on other grounds. *See, e.g.*, *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 287 B.R. 515, 525 n.11 (9th Cir. B.A.P. 2002) ("*Cecchini* was overruled only as to the legal standard for determining the nondischargeability of a 'willful and malicious' injury for purposes of § 523(a)(6).  However, the portion of *Cecchini* that addressed vicarious liability for acts of an agent has not been overruled.").

> principal is an acknowledgment that the usual legal
> fiction of complete agent-principal communication is
> unjustified where the agent is acting adversely. Section
> 102(f) of the UPA . . . expresses this adverse interest
> exception[.]

*Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (internal

citation omitted). And most jurisdictions follow the rule that "for the adverse

interest exception to apply, the agent 'must have *totally abandoned* his principal's

interests and be acting *entirely* for his own or another's purposes[.]" *Kirschner v.*

*KPMG LLP*, 938 N.E.2d 941, 953 (N.Y. 2010) (quoting *Center v. Hampton*

*Affiliates*, 488 N.E.2d 828, 830 (N.Y. 1985) (emphasis in *Kirschner*)). *See also,*

*e.g.*, *In re Amerco Derivative Litig.*, 252 P.3d 681, 695 (Nev. 2011) (holding that

"the agent's actions must be completely and totally adverse to the corporation to

invoke the exception"); *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773

(4th Cir. 1995) ("Complete adversity is required because when the agent is acting

both for his own benefit and that of his principal, the agent is acting within the

scope of the agency relationship[.]"). Indeed, this court applied the same rule in a

related bankruptcy matter arising out of Kimura's Ponzi scheme. *See DeCoite*,

2013 WL 2897792, at *8 ("For [the adverse interest] exception to apply, 'the agent

must have totally abandoned the principal's interest and be acting for his own

purposes or those of another. In other words, the interests of the agent must be

completely adverse to those of his principal.'") (quoting *Great Divide Ins. Co. v. AOAO Maluna Kai Estates*, 2006 WL 2830885, at *7 (D. Haw. Sept. 28, 2006)).

"This rule avoids ambiguity where there is a benefit to both the insider and the corporation, and reserves this most narrow of exceptions for those cases -- outright theft or looting or embezzlement -- where the insider's misconduct benefits only himself or a third party; *i.e.*, where the fraud is committed *against* a corporation rather than on its behalf." *Kirschner*, 938 N.E.2d at 952. This is because "[a] fraud that by its nature will benefit the corporation is not 'adverse' to the corporation's interests, even if it was actually motivated by the agent's desire for personal gain." *Id.* (citation omitted).

In discussing whether wrongdoing by an agent "benefits" a principal, *Kirschner* reasoned that "[s]o long as the corporate wrongdoer's [*i.e.*, the agent's] fraudulent conduct enables the business [*i.e.*, the principal] to survive -- to attract investors and customers and raise funds for corporate purposes -- this [adverse interest] test is not met." *Id.* at 953 (citing *Baena v. KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006) ("A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the company in the first instance[.]")).

"Consistent with these principles, any harm from the discovery of the

fraud -- rather than from the fraud itself -- does not bear on whether the adverse interest exception applies. The disclosure of corporate fraud nearly always injures the corporation." *Id. See also, e.g.*, *Indus. Enters. of Am., Inc. v. Mazzuto* (*In re Pitt Penn Holding Co.)*, 484 B.R. 25, 39-40 (Bankr. D. Del. 2012) ("Only the 'short term benefit or detriment' is relevant, and 'not any detriment . . . resulting from the unmasking of the fraud.'") (quoting *Kirschner*); *id*. at 40 n.31 ("[A]llegations that an agent's fraud drove the corporation to bankruptcy do not compel a finding of adversity."). "Generally, a fraud will suit the interests of both a company and its insiders for as long as it remains a secret," *Kirschner*, 938 N.E.2d at 953, and thus "[i]f the [principal] benefits while the fraud remains a secret, the adverse interest exception will not apply." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 147 (Bankr. S.D.N.Y 2014).

Applied here, the parties do not dispute that the Kimura/Hinahara partnerships benefitted (at least in the short term) by obtaining proceeds from Kimura's Ponzi scheme. As the Bankruptcy Court found, "[m]ost of the joint investments and companies of the Hinaharas and the Kimuras were successful and profitable." PFOF/PCOL at 8, ¶ 17. Moreover, the Hinaharas themselves both testified that they benefitted from the profits of the partnerships. *See* Doc. No. 17, Pl.'s Suppl. Response at 8 (citing testimony).

The Hinaharas argue that they (and the partnerships) were ultimately harmed by the Ponzi scheme. They point out that they did not actually know of the Ponzi scheme, and did not authorize any diversion of partnership funds to the scheme. They argue that Kimura breached fiduciary duties owed to the partnerships by intentionally misrepresenting or failing to disclose material facts. Even accepting these arguments, however, the Hinaharas (and the Kimura/Hinahara partnerships) also benefitted for several years by Kimura's actions. The fraud enabled the partnership business to survive and make money (both for the partnerships and for the Hinaharas). *Kirschner*, 938 N.E.2d at 953. Much of the harm to the partnerships and to the Hinaharas was from "the discovery of the fraud -- rather than from the fraud itself." *Id.* That is, even if the Hinaharas and the Kimura/Hinahara partnerships were ultimately harmed by Kimura's Ponzi scheme, they nevertheless benefitted as well.

In short, the Hinaharas have not demonstrated that Kimura "*totally* abandoned the principal's interest [and that] the interests of [Kimura were] *completely* adverse" to the partnerships. *DeCoite*, 2013 WL 2897792, at *8 (emphases added). The "fraud on the partnership" exception does not apply.[15]

---

[15] Trustee also emphasizes that "the [fraud on the partnership] exception is not intended to prevent third parties [such as a Trustee pursuing claims on behalf of creditors] from pursuing

(continued...)

## C.    Certification to the Hawaii Supreme Court

Given that the "fraud on the partnership" exception does not apply, the court unequivocally is presented with determining whether a partner's knowledge of a fact relating to the partnership is necessarily imputed to individual partners or only the partnership under HRS § 425-102(f).[16]  All conditions of HRAP 13(a) are satisfied.  The issue is an important question of Hawaii law.  The answer is not found in any Hawaii appellate court decision.  And the answer is "determinative of the cause" now before this court in the Objections to the Bankruptcy Court's PFOF/PCOL.  Accordingly, the court proposes to certify the following question of Hawaii partnership law to the Hawaii Supreme Court:

---

[15](...continued)
claims against the entire partnership."  Doc. No. 17, Suppl. Response at 12.  Trustee incorrectly proffers this statement as Sixth Circuit law from *Jeff Miller Stables*, 573 F.3d at 302.  *Id.*  This misrepresents Sixth Circuit law -- the citation is to the *concurrence* in *Jeff Miller Stables* which by definition is not binding.  *See, e.g.*, *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (reasoning that a statement in a concurrence does not constitute binding precedent).

In any event, because the "fraud on the partnership" exception does not apply where the Hinaharas and the Kimura/Hinahara partnerships received substantial benefits from Kimura's Ponzi scheme, the court need not reach whether the exception would also not apply for other reasons.  *See Grassmueck*, 365 F. Supp. 2d at 1049-50 (giving two other instances where the fraud exception in UPA § 102(f) does not apply: "with respect to the rights of third parties acting without knowledge of the fraud," and "when the partner perpetrating the fraud acts as the sole representative or 'alter-ego' of the partnership").

[16]  This court agrees with the Bankruptcy Court's observation that facts related to Kimura's knowledge of the Ponzi scheme are "facts related to the partnership," even if he was not acting at all times in the best interests of the Kimura/Hinahara partnerships.  *See* PFOF/PCOL at 34-35, ¶ 24.

> Is a partner's knowledge of a fact relating to the partnership necessarily imputed to the individual partners, or is such knowledge only imputed to the partnership itself, or is it imputed to both?

The parties may, however, propose an alternative version of the question, or otherwise comment on the form of the question. Any such comment is limited to five pages and is due by **February 27, 2015**.

To be clear, the court will not consider argument on *whether* to certify the question. Rather, the court is seeking input on the form of the question. After considering any input from the parties, the court will issue an Order presenting the certified question. After the Order presenting the certified question is filed, and if the question is accepted, the court intends to issue a separate Order staying and administratively closing this action.

## V.  <u>CONCLUSION</u>

The "fraud on the partnership" exception to imputation in UPA § 12 and RUPA § 102(f) does not apply. Accordingly, by **February 27, 2015**, the parties may file comments to the form of the question of Hawaii law that the court

///

///

///

intends to certify to the Hawaii Supreme Court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 20, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Field v. Hinahara*, Civ. No. 14-00457 JMS-KSC, Order (1) Ruling on Question of Law Regarding the "Fraud on the Partnership" Exception, and (2) Requesting Comment on Form of Question to Be Certified to the Hawaii Supreme Court