| | |
|---|---|
| In re MAUI INDUSTRIAL LOAN & FINANCE CO., INC., <br><br>　　　　　Debtor.<br>_____<br><br>DANE S. FIELD,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>DENNIS I. HINAHARA; MYRA S. HINAHARA,<br><br>　　　　　Defendants.<br>_____ | U.S.D.C. CIV. NO. 14-00457 JMS-KSC<br><br>CERTIFIED QUESTION; ORDER CERTIFYING QUESTION OF LAW FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII |

## **CERTIFIED QUESTION; ORDER CERTIFYING QUESTION OF LAW FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII**

### I. **INTRODUCTION**

This Order certifies to the Hawaii Supreme Court an important and unsettled question of Hawaii law, the answer to which will resolve a dispositive issue pending before the United States District Court for the District of Hawaii in this adversary bankruptcy proceeding. Based on the following, the court determines that the requirements of Hawaii Rule of Appellate Procedure

("HRAP") 13(a) are satisfied,[1] and certifies the following question of Hawaii partnership law to the Hawaii Supreme Court:

> Is an individual partner's knowledge of a fact relating to the partnership and/or to partnership affairs necessarily imputed to (1) the other individual partners; (2) the partnership itself and not the other individual partners; or (3) both the partnership and the other individual partners?

## II. <u>BACKGROUND</u>

This action arises out of a Ponzi scheme perpetrated by Lloyd Kimura ("Kimura").[2] Plaintiff bankruptcy trustee Dane S. Field ("Trustee"), seeks to avoid

---

[1] HRAP 13(a) provides:

> When a federal district or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is no clear controlling precedent in the Hawaiʻi judicial decisions, the Hawaiʻi Supreme Court may answer the certified question by written opinion.

[2] *Donell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2007), explains that:

> A Ponzi scheme is a financial fraud that induces investment by promising extremely high, risk-free returns, usually in a short time period, from an allegedly legitimate business venture. "The fraud consists of funnelling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *In re United Energy Corp.*, 944 F.2d 589, 590 n.1 (9th Cir. 1991). *See generally Cunningham v. Brown*, 265 U.S. 1, 7-9 (1924) (detailing the remarkable criminal financial career of Charles Ponzi).

nearly a million dollars of fraudulent transfers made to Defendants Dennis and Myra Hinahara (the "Hinaharas") by Debtor Maui Industrial Loan and Finance Company, Inc., which sometimes did business as Maui Finance Company ("MFC") in connection with Kimura's Ponzi scheme. Currently before the court are Objections under 28 U.S.C. § 157(c)(1) to a July 11, 2014 Proposed Findings of Fact and Conclusions of Law ("PFOF/PCOL") of the United States Bankruptcy Court for the District of Hawaii that, among other matters, found that the Hinaharas took most of the transfers in good faith.[3]

At issue here is a question of Hawaii partnership law based on the Uniform Partnership Act ("UPA") § 12 (previously adopted in Hawaii Revised Statutes ("HRS") § 425-112 (1972)), and the Revised Uniform Partnership Act ("RUPA") § 102(f) (adopted in HRS § 425-102(f) (2000)).[4] Specifically, UPA § 12 provides:

---

[3] Although this Order recites certain undisputed facts and sets forth certain legal principles, the Objections to the PFOF/PCOL remain pending -- the parties should not construe statements in this Order as definitively adopting (or rejecting) any of the specific findings or conclusions in the PFOF/PCOL.

[4] The Hawaii Legislature enacted HRS § 425-102(f) as part of its adoption of RUPA as a whole, effective in 2000. *See* Act 284, 1999 Haw. Sess. L. 886. Prior to that, Hawaii followed UPA § 12 as codified in 1972 in the prior HRS § 425-112 (1972). *See* Act 17, 1972 Haw. Sess. L. 174 (adopting the UPA). Because Kimura's Ponzi scheme ran from the late 1980's, both HRS § 425-112 (1972) and HRS § 425-102(f) (2000) -- UPA § 12 and RUPA § 102(f) -- are potentially at issue. The relevant question regarding imputation, however, is the same under either statute or model Act.

> Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

Likewise, RUPA § 102(f) provides:

> A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

By Order of February 20, 2015, the court concluded that the "fraud on the partnership" exception in UPA § 12 and RUPA § 102(f) ("except in the case of a fraud on the partnership committed by or with the consent of that partner") does not apply to the facts of this action. *See Field v. Hinahara (In re Maui Indus. Loan & Fin. Co.)*, ___ F. Supp. 3d ___, 2015 WL 736226, at *6 (D. Haw. Feb. 20, 2015). In that Order, the court also agreed with the Bankruptcy Court that facts related to Kimura's knowledge of the Ponzi scheme are "facts related to the partnership," even if he was not acting at all times in the best interests of the Kimura/Hinahara partnerships. *Id*. at *8 n.16.

Given those conclusions, the court squarely faces a straightforward question -- is Kimura's knowledge of his Ponzi scheme imputed to the Hinaharas (who were partners with Kimura in certain real estate transactions) individually, or is Kimura's knowledge of his Ponzi scheme imputed only to the partnerships themselves (or both)? To understand the context for the issue, the court first sets forth relevant background facts regarding the Ponzi scheme, and then explains why the answer to this unsettled question is dispositive of the issue now before the court in Trustee's Objections to the Bankruptcy Court's PFOF/PCOL.

## A. Kimura's Ponzi Scheme[5]

Kimura was a certified public accountant on Maui who, beginning in 1985, was the principal owner and the person in control of MFC. PFOF/PCOL at 3, ¶ 3. MFC was licensed under Hawaii law as a "nondepository financial services loan company," engaged in the business of making loans. *Id.* ¶ 2. Although Hawaii law forbids nondepository financial services loan companies from accepting deposits from the public, MFC ignored this prohibition and accepted millions of dollars of deposits from dozens of depositors. *Id.*

---

[5] The court describes the background of Kimura's Ponzi scheme only as necessary to explain the context for the certified question. Many more details are set forth in the PFOF/PCOL. Doc. No. 1-2. *See also generally Field v. DeCoite (In re Maui Indus. Loan & Fin. Co.)*, 2013 WL 2897792, at *1 (D. Haw. June 12, 2013) (describing the scheme in a related adversary action). Likewise, this Order focuses on only the primary issue raised in the Objections to the PFOF/PCOL.

Beginning in the late 1980s, Kimura began to operate a Ponzi scheme. *Id.* ¶ 7. He induced individuals (many of them his accounting clients) to invest money with him or MFC, often representing that MFC was a bank or savings and loan business that made loans at high interest rates secured by collateral and that investors would receive interest at rates usually ranging from eight to twelve percent. *Id.* Contrary to his promises, he usually did not use the investors' funds to make loans, but instead used them to finance his personal businesses and investments, to maintain his personal lifestyle, and (in order to maintain the perceived legitimacy of his business) to pay earlier investors their promised principal and interest. *Id.* He also generated false monthly statements and tax returns to convince investors that he was using their funds as promised. *Id.* In order to generate some of the cash needed to keep the Ponzi scheme afloat, he fraudulently obtained bank loans and looted his accounting firm's retirement plan accounts. *Id.*

The Hinaharas are husband and wife and residents of Maui. *Id.* ¶ 4. They met Kimura in the early 1980s. *Id.* ¶ 5. Over the course of their relationship, the Hinaharas engaged in a number of business ventures with Kimura. For example, the Hinaharas made a number of monetary transfers to MFC from 1990 through June 2007, which Mr. Hinahara thought of as "deposits" in a savings

account, and on which MFC regularly paid the interest due (although on some occasions the payments were a few days late). *Id.* ¶¶ 9, 12.

Beginning in 1988, Kimura and his wife and the Hinaharas also jointly purchased interests in numerous parcels of real estate. *Id.* ¶ 14. Some of the properties were acquired by Kimura and Mr. Hinahara; some investments included one or both of their wives; and some included other unrelated people. *Id.* Each of these joint investments in real estate was a partnership, an association of two or more persons to carry on as co-owners a business for profit. *Id.* ¶ 15.

Most of the Hinahara/Kimura partnerships were successful and profitable. *Id.* ¶ 17. With the agreement of the other investors and/or partners, Kimura managed the day-to-day affairs of these partnerships, which included keeping the books, collecting rents and other income, paying expenses, and arranging for routine upkeep of the properties. Kimura also deposited income from these ventures directly into the Hinaharas' accounts. Bankr. Dkt. 147 at 45, 49; *id.*, Bankr. Dkt. 148 at 84.

On October 19, 2009, the Hawaii Commissioner of Financial Institutions made a preliminary finding that MFC was unlawfully soliciting, accepting, or holding deposit accounts, and issued a temporary cease and desist order. *Id.* ¶ 25. MFC failed to respond to the temporary order, and the

7

Commissioner made it permanent on November 3, 2009. *Id.* On January 28, 2010, MFC filed a chapter 7 bankruptcy petition.

Meanwhile, Kimura was charged in federal court with mail fraud, bank fraud, theft from an employee benefit plan, and other crimes arising out of MFC. He was convicted after entering into a January 5, 2011 plea agreement in which he admitted to operating a Ponzi scheme. *Id.* ¶ 27. In the plea agreement, Kimura admitted among other facts that:

> Once individual investors provided funds to [Kimura] the funds were usually not loaned to individual borrowers or businesses as represented, but were instead deposited into [MFC's] bank account . . . . The funds were then expended on [Kimura's] personal and business endeavors to include the purchase of land and buildings as well as other business ventures of [Kimura].
> . . . .
> Instead of using investor funds for the purposes represented . . . [Kimura] used investor funds to maintain the liquidity of his businesses [and] to purchase real estate[.]

Doc. No. 89-1 at 198-99, Pl.'s Ex. 20 at 5, 6 ¶¶ 8e & 8h. Likewise, in a related case, the Bankruptcy Court explained that

> [t]he plea agreement establishes that Mr. Kimura's Ponzi structure was not isolated to one specific entity, but rather encompassed a web of transactions all orchestrated by Mr. Kimura himself. . . . The plea agreement, therefore, establishes Mr. Kimura's and MFC's fraudulent intent as to all of the transactions

8

conducted during the Ponzi scheme.

*Field v. Marumoto (In re Maui Indus. Loan & Fin. Co.)*, 2013 WL 1909536, at *1 (Bankr. D. Haw. May 8, 2013).

## B. The Adversary Complaint and the PFOF/PCOL

As part of MFC's bankruptcy proceeding, Trustee filed this adversary Complaint against the Hinaharas seeking to avoid nearly a million dollars of fraudulent transfers made to the Hinaharas by MFC in connection with Kimura's Ponzi scheme. The Hinaharas asserted an affirmative good faith defense under HRS § 651C-8(a).[6] Trustee agreed (and, in any event, the Bankruptcy Court found) that the Hinaharas had no *actual* knowledge that Kimura and/or MFC was

---

[6] Under 11 U.S.C. § 544(b)(1), bankruptcy trustees "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under [bankruptcy provisions]." Accordingly, trustees may assert avoidance claims under state law that an actual creditor could assert. *See, e.g.*, *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 534-35 (9th Cir. 1990). In this regard, HRS § 651C-4 provides, in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

In turn, HRS § 651C-8(a) provides that "[a] transfer or obligation is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

9

insolvent, operating a Ponzi scheme, or making transfers with the intent to hinder, delay, or defraud creditors, until sometime after MFC filed its bankruptcy petition in 2010. PFOF/PCOL at 26-27, ¶ 12. Trustee, however, argued that the Hinaharas did not take any transfers in good faith because knowledge of Kimura's fraud is imputed to the Hinaharas as a matter of law (*i.e.*, UPA § 12, and/or RUPA § 102(f)) given the partnerships they formed with Kimura.

The Bankruptcy Court issued its PFOF/PCOL after a seven-day trial which was limited to the Hinaharas' good faith defense (the Bankruptcy Court had previously determined as a matter of law at the summary judgment stage that the transfers at issue were "fraudulent" as having been made "with actual intent to hinder, delay, or defraud" creditors under HRS § 651C-4(a)(1)).[7] It determined that the Hinaharas took the transfers in good faith -- that is, Kimura's knowledge was not imputed to the Hinaharas -- such that Trustee could recover only the difference between MFC's transfers to the Hinaharas and the Hinaharas' deposits to MFC ($52,729.75) plus pre-judgment interest. This amount is substantially less than the $988,879.75 originally sought by Trustee. Trustee filed Objections with

---

[7] It also granted partial summary judgment in favor of the Hinaharas, ruling under 11 U.S.C. § 548 that Trustee may not recover transfers made more than two years before the bankruptcy filing. PFOF/PCOL at 1-2. This ruling is not before this court.

this court under 11 U.S.C. § 157(c)(1).[8]

### III. DISCUSSION

Because Kimura and the Hinaharas were partners in certain real estate transactions related to Kimura's Ponzi scheme, Trustee seeks to impute Kimura's knowledge of the Ponzi scheme to the Hinaharas. And, of course, imputing such knowledge would negate the Hinaharas' defense of good faith. In addressing this issue, it is important to understand exactly what knowledge Trustee seeks to impute. Among other assertions, Trustee's theory, as clarified in supplemental briefing addressing the "fraud on the partnership" exception, is that:

- "All of the Kimura/Hinahara partnerships were part of Kimura's Ponzi scheme, beginning with the first one, formed in November 1988;"

- "Every transfer Kimura and MFC made to the Kimura/Hinahara partnerships was made with fraudulently-obtained proceeds of Kimura's Ponzi scheme and with the actual intent to defraud;" and

- "All of the transfers that the Hinaharas took from MFC were fraudulently obtained proceeds of Kimura's Ponzi scheme."

Doc. No. 12, Pl.'s Suppl. Mem. at 1-2.

Further, Trustee bases his theory *beyond* Kimura only using *proceeds* of his Ponzi scheme to invest in Kimura/Hinahara real estate partnerships -- he

---

[8] The Hinaharas also filed an Objection that is not pertinent to present proceedings.

also asserts that those partnerships were actually "part of the Ponzi scheme." Doc. No. 14, Tr. Jan. 23, 2015 Hearing at 6-7. Not only were proceeds of the Ponzi scheme used to fund real estate partnerships, but the partnerships were used "to build up equity to further the Ponzi scheme." *Id*. at 9. Trustee argues that "proceeds from the real estate sales went into [MFC]," and "[e]verything that went into [MFC] then came out." *Id.* at 11. In other words, the partnerships and Ponzi scheme were inextricably intertwined. As a result, this court has already determined that "facts related to Kimura's knowledge of the Ponzi scheme are 'facts related to the partnership,' even if he was not acting at all times in the best interests of the Kimura/Hinahara partnerships." *See In re. Maui Indus. Loan & Fin.*, 2015 WL 736226, at *9 n.16 (citing PFOF/PCOL at 34-35 ¶ 24 (concluding that such facts are "relating to the partnerships" and are "matter[s] relating to partnership affairs").

In seeking to impute Kimura's knowledge to the Hinaharas, Trustee relies on applying general principles of partnership law from UPA § 12 and RUPA § 102(f) -- now codified in HRS § 425-102(f) -- that knowledge of a partner relating to partnership affairs is imputed to "the partnership." Trustee contends that knowledge imputed to the partnership is necessarily also imputed to the individual partners -- imputation to all partners follows from the nature and

definition of a partnership, which HRS § 425-101 defines as "an association of two or more persons to carry on as co-owners a business for profit."

The Bankruptcy Court disagreed, concluding that the plain language of § 425-102(f) (and its predecessor, HRS § 425-112 (1972)) only imputes knowledge of a partner *to the partnership*, and not to other individual partners. This conclusion was based in part on the "modern view" that partnership law considers a partnership to be a distinct entity (in contrast to an outdated view that a partnership is no more than an association of persons). *See* HRS § 425-108(a) ("A partnership is an entity distinct from its partners."). The Bankruptcy Court reasoned that "[t]he concept of imputation of notice among partners is an anachronism," PFOF/PCOL at 30, ¶ 19a, concluding that "[i]n short, the doctrine that notice to one partner is imputed to all other partners was correct at common law, but is no longer correct under UPA and RUPA." *Id.* at 31, ¶ 19d.

Among other grounds, Trustee objects to the Bankruptcy Court's reading of Hawaii partnership law, arguing that the "anachronism" of imputation of notice among partners is nevertheless valid and is embedded in caselaw. *See, e.g.*, *Friend v. H.A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir. 1969) ("Well established concepts of partnership doctrine impute the knowledge and actions of one partner to all others.") (citations omitted); *BMS P'ship v. Winter Park Devil's*

13

*Thumb Inv. Co.*, 910 P.2d 61, 63 (Colo. App. 1995) ("Under the law of general partnerships, notice to and knowledge of the general partner of the enterprise operates as notice and knowledge to the partnership. Likewise, in a general partnership, notice to the general partner also operates as notice to each partner.") (citations omitted); *Affiliated FM Ins. Co. v. Kushner Cos.*, 627 A.2d 710, 716 (N.J. Super. 1993) ("Knowledge by one partner with respect to any matter relating to a transaction within the ordinary scope of the partnership business is knowledge to all partners. Knowledge with respect to partnership property is imputable to the remaining partners regardless of the nature of the partnership.") (citations omitted).

Hawaii courts have not specifically addressed, after adoption of the UPA and RUPA, whether a partner's knowledge is necessarily imputed to other individual partners (as opposed to being imputed only to the partnership, or perhaps to both). The Bankruptcy Court recognized that these questions are not answered by general statements of Hawaii partnership law indicating that an "innocent" partner remains liable for actions of other partners committed within the scope of the partnership's business. *See* PFOF/PCOL at 32-33, ¶¶ 20b & 20c (distinguishing *Fujimoto v. Au*, 95 Haw. 116, 160, 19 P.3d 699, 743 (2001) ("[L]ack of actual knowledge of wrongdoing and innocence of fraud, in

14

themselves, do not absolve one joint venturer of liability for the fraud of another joint venturer acting within the scope and authority of the joint venture.") (citing *E. Iron & Metal Co. v. Patterson*, 39 Haw. 346, 356-58 (1952)). "In the absence of Hawaii case law directly on point . . . [the Bankruptcy Court] predict[ed] that Hawaii's state courts would follow the plain language of RUPA and UPA and hold that notice to a partner is imputed to the partnership but not to the other partners." PFOF/PCOL at 29, ¶ 18.

And so, the legal question raised by Trustee is whether, under Hawaii law, a partner's knowledge of a fact relating to the partnership (or to partnership affairs) is imputed to all other individual partners, only to the partnership itself, or both. The court will certify this important question of Hawaii law to the Hawaii Supreme Court under HRAP 13(a). Rule 13(a) provides that a federal district court may certify a question to the Hawaii Supreme Court when the question (1) concerns Hawaii law; (2) is "determinative of the cause;" and (3) there is no clear controlling precedent in Hawaii judicial decisions.

All conditions of HRAP 13(a) are satisfied. The issue is an important question of Hawaii law. The answer is "determinative of the cause" now before this court in the Objections to the Bankruptcy Court's PFOF/PCOL, and the answer is not found in any controlling Hawaii precedent. Accordingly, the court

15

certifies the following question of Hawaii partnership law to the Hawaii Supreme Court:

> Is an individual partner's knowledge of a fact relating to the partnership and/or to partnership affairs necessarily imputed to (1) the other individual partners; (2) the partnership itself and not the other individual partners; or (3) both the partnership and the other individual partners?

This form of the question encompasses Hawaii law under either potentially-applicable statutory provisions -- HRS § 425-112 (1972) and HRS § 425-102(f) (2000) -- that is, under both UPA § 12, and RUPA § 102(f).[9]

The court's "phrasing of the question should not restrict the [Hawaii Supreme Court's] consideration of the problems and issues involved. The [Hawaii Supreme Court] may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." *Allstate Ins. Co. v. Alamo Rent-A-Car, Inc.*, 137 F.3d 634, 637 (9th Cir. 1998) (citation and quotation signals omitted). If the Hawaii Supreme Court declines to accept certification, this court will "resolve the issues according to [its] understanding of Hawaii law." *Id*. (citation and quotation signals omitted).

---

[9] Of course, if the Hawaii Supreme Court determines that the answer is *different* as between UPA and RUPA, an Opinion making such a clear distinction might also make a difference in the ultimate result in this court -- the good faith defense might only apply to some transfers.

If the Hawaii Supreme Court accepts this certified question, this matter will be stayed pending a decision by the Hawaii Supreme Court, and the case will be administratively closed.  The case will be reopened by the Clerk of Court upon issuance of a decision by the Hawaii Supreme Court, or upon further order of this court.  Such an order reopening the case may be issued *sua sponte*, or a party may petition for reopening upon a showing of good cause.  The administrative closing will not impact, in any manner, any party's rights or obligations or the Certified Question, and will not require a filing fee to reopen the case.

///

///

///

///

///

///

///

///

///

///

## IV. CONCLUSION

For the foregoing reasons, the court certifies the following question of Hawaii partnership law to the Hawaii Supreme Court:

> Is an individual partner's knowledge of a fact relating to the partnership and/or to partnership affairs necessarily imputed to (1) the other individual partners; (2) the partnership itself and not the other individual partners; or (3) both the partnership and the other individual partners?

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 5, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Field v. Hinahara*, Civ. No. 14-00457 JMS-KSC, Certified Question; Order Certifying Question of Law from the United States District Court for the District of Hawaii